# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN FAHEY, | ) | |
|     Plaintiff, | ) | Civil Action No. 15-431Pittsburgh |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID SACKS, | ) | Magistrate Judge Baxter |
|     Defendant. | ) | |

## **MEMORANDUM OPINION**[1]

United States Magistrate Judge Susan Paradise Baxter

**Relevant Procedural History**

    This civil action was filed in this Court on March 31, 2015. Plaintiff, an inmate incarcerated at the State Correctional Institution at Greene, brings this action against Defendant David Sacks, a member of SCI-Greene's psychology department.

    In his counseled amended complaint, Plaintiff alleges that in retaliation for Plaintiff bringing grievances against Defendant, Defendant issued Plaintiff an unfounded misconduct causing Plaintiff to spend over seventy days in a restricted housing unit and resulting in the denial of parole for Plaintiff. Plaintiff further alleges that Defendant acted with deliberate indifference to Plaintiff's paranoid schizophrenia by refusing to acknowledge Plaintiff's diagnosis and accusing Plaintiff of falsifying his symptoms in order to receive special treatment. As such, Defendant has denied Plaintiff's request to live in single-cell housing, a request that has

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. ECF No. 8; ECF No. 55.

1

been routinely granted for Plaintiff in the past in order to preserve the safety of Plaintiff and those around him and to prevent the deterioration of Plaintiff's mental condition. Plaintiff claims his First Amendment and Eighth Amendment rights have been violated by Defendant's conduct. ECF No. 39.

Defendant filed a motion for summary judgment based solely on Plaintiff's failure to exhaust administrative remedies in accordance with the Prison Litigation Reform Act. ECF No. 59. Plaintiff has filed a brief in opposition arguing that Plaintiff's failure should be excused due to his fear of retaliation. ECF No. 65. This motion is fully briefed and is ripe for disposition by this Court.

**Standard of Review - Motion for summary judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989) (the non-

movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587.

**The Allegations of the Complaint[2]**

In 2003, Plaintiff was evaluated at SCI Graterford and was diagnosed with paranoid schizophrenia. ECF No. 39, ¶ 7. On September 7, 2014, Defendant Sacks, an employee in SCI Greene's psychology department, requested to meet with Plaintiff. Id. at ¶ 10. During the meeting, Defendant questioned Plaintiff about his paranoid schizophrenia. Plaintiff replied by describing his experience with the disorder as having troublesome thoughts and hearing voices. Id. at ¶ 11. Defendant responded that his issues were "not a real disorder" and accused Plaintiff of fabricating his symptoms in order to received special treatment. Id. at ¶ 12.

---

[2] Because the Concise Statements do not address the factual underpinnings of the claims, this Court herein restates the allegations of Plaintiff's complaint in order to provide context.

3

After the meeting, Plaintiff filed grievances against Defendant on October 16, 2014. Id. at ¶ 13. All of Plaintiff's grievances against Defendant were ultimately denied. Id. at ¶ 14.

On November 5, 2014, less than a month after Plaintiff had filed grievances against Defendant and about a week before Plaintiff's first parole hearing, Defendant issued Plaintiff a misconduct for allegedly using "inappropriate language" and telling cellmates to worship Satan. Id. at ¶ 15. As a result of the misconduct, Plaintiff was sent to Restricted Housing Unit and remained there for 72 days. Id. at ¶ ¶ 17-18. On November 13, 2015, Plaintiff was denied parole. Among the reasons listed for the denial were "report and evaluations, which includes consideration of any misconducts." Id. at ¶ 20. Plaintiff was denied parole as a result of the misconduct issued by Defendant. Id. at ¶ 21. On April, 27, 2015, Plaintiff was again denied parole. Id. at ¶ 23.

At Count I, Plaintiff alleges that Defendant Sacks retaliated against him for the filing of the grievance. At Count II, Plaintiff alleges that Defendant was deliberately indifferent to the serious medical needs of Plaintiff by 1) refusing to acknowledge the existence of Plaintiff's condition and to treat the condition; 2) the inexcusable delay in obtaining proper medication to alleviate Plaintiff's symptoms; and 3) the refusal to grant Plaintiff's reasonable request for special housing arrangement in order to alleviate Plaintiff's symptoms, avoid conflicts with Plaintiff's cellmates, and increase Plaintiff's safety and the safety of those around him. Id. at ¶ 30.

**The Prison Litigation Reform Act**

**The Exhaustion Requirement**

Defendant argues that he is entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies in accordance with the requirement of the Prison Litigation Reform Act.

A sister court within the Middle District has concisely summarized the burdens of proof on the failure to exhaust defense:

> Failure to exhaust available administrative remedies is an affirmative defense that must be pleaded and proven by the defendant. But once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. However, as required by the Supreme Court, the ultimate burden of proof remains with the defendant.

Njos v. Argueta, 2017 WL 1304301, at *2 (M.D. Pa. Feb.23, 2017) (internal citation omitted).[3]

The PLRA, 42 U.S.C. § 1997e(a) provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d

---

[3] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[4] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[5]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to

---

[4] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[5] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

### The Administrative Process Available to State Inmates

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

7

**Plaintiff's utilization of the grievance system**

The parties agree that Plaintiff did not fully and properly exhaust his administrative remedies as to the legal claims raised in this case. The evidence reflects that Plaintiff filed two grievances about the psychology staff during the relevant time period. On October 21, 2014, Plaintiff filed Grievance 532605 about interaction that he had with Defendant David Sacks. ECF No. 62, ¶ 6. The grievance was rejected because it did not include a date and the rejection noted that the Grievance could be resubmitted to cure the deficiency within five business days. Id. at ¶ ¶ 7-8. On October 27th, Plaintiff resubmitted the grievance giving a date of October 14th as the date of his interaction with Defendant Sacks. Id. at ¶ 9. On November 17, 2014, Plaintiff received a response to his grievance which indicated:

> In reviewing documentation and staff interviews related to the above mentioned interaction(s) all applicable policies and procedures were adhered to and there is no evidence supporting this grievance. A review of the facts clearly demonstrates that Mr. Fahey LP0255 is receiving the appropriate level of [mental health] care. All applicable policies and procedures are being adhered to in addressing his [mental health] concerns. The grievance is denied and Mr. Fahey is encouraged to partner with his treatment providers as he experiences the appropriate level of care. He is further encouraged to work with his unit team regarding the potential for an incentive based transfer.

ECF No. 61-1, page 76.

On November 5, 2014, after Plaintiff had resubmitted this grievance, Defendant Sacks issued a retaliatory misconduct to Plaintiff, which resulted in Plaintiff being sentenced to ninety days in Restricted Housing. ECF No. 61-1, Exhibit 3.[6] Then, Plaintiff filed Grievance 536685 complaining that Defendant's threats, as set out in Grievance 532605, had been realized and that

---

[6] Defendant has not filed a response to Plaintiff's concise statement as is required by the Federal and Local Rules of Civil Procedure. This Court will consider these facts undisputed for purposes of this motion. See Fed.R.Civ.P. 56.

Defendant Sacks had issued a misconduct in retaliation for the filing of 532605. Both grievances were denied for reasons that Plaintiff disputes. Plaintiff maintains that he did not appeal either of these grievances to final review as he was afraid of the potential for additional retaliatory conduct from Defendant. See ECF No. 61-1.

Interference with an inmate's attempts at exhaustion impacts the availability of the administrative remedy process. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it.").[7] Although there is no precedential Third Circuit case that is precisely on point with the facts of this case, the Third Circuit has cited with approval the decisions of other Circuits formally recognizing that the fear of retaliation can render administrative remedies unavailable. See Williams v. Gavin, 640 Fed.App'x 152, 155 (3d Cir. 2016) citing Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 684-86 (7th Cir. 2006); and Hemphill v. New York, 380 F.3d 680, 686-87 (2d Cir. 2004); Verbanik v. Harlow, 441 Fed.App'x 931, 935 (3d Cir. 2011) ("… [A]s there is a question whether administrative remedies were rendered unavailable as to all of Verbanik's claims by defendants'' alleged retaliatory actions, we will vacate the District Court's order and will remand for further proceedings.").

Because Defendant has not met his burden to demonstrate that Plaintiff failed to exhaust his administrative remedies and because Plaintiff has produced evidence that the full

---

[7] See also Berry v. Klem, 283 Fed.App'x 1, 5 (3d Cir. 2009) ("[Plaintiff] contended that the severity of his injuries prevented him from timely filing his initial grievance. [ ... and] also argued that the administrative grievance process was not available to him because he feared serious harm for filing a grievance. While that claim may not ultimately prevail, his allegations put in question the availability of the remedy."); McKinney v. Guthrie, 2009 WL 274159, at *1 (3d Cir. 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process.").

administrative remedy process may not have been available to him, summary judgment will be denied.[8]

An appropriate order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: March 27, 2018

---

[8] The issue of exhaustion may need to be resolved through an evidentiary hearing. See Small v. Camden County, 728 F.3d 265 (3d Cir. 2013); Scott v. Erdogan, 2016 WL 4154939, at * 2 (M.D. Pa. 2016) citing Small, 728 F.3d at 268 ("Where this process entails fact-finding and resolution of factual disputes, the Court may resolve the issue of exhaustion through an evidentiary hearing.").