# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WARREN FAHEY,** | ) | |
| Plaintiff, | ) | Civil Action No. 15-431Pittsburgh |
| | ) | |
| v. | ) | |
| | ) | District Judge Baxter |
| | ) | |
| **DAVID SACKS,** | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

## WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW

United States District Judge Susan Paradise Baxter

**Relevant Procedural History**

This civil action was filed in this Court on March 31, 2015. Plaintiff Warren Fahey, formerly an inmate incarcerated at the State Correctional Institution at Greene[2], brings this action against Defendant David Sacks, a member of SCI-Greene's psychology department.

In his counseled amended complaint, Mr. Fahey alleges that in retaliation for filing a grievance against Mr. Sacks, Mr. Sacks issued an unfounded misconduct causing Mr. Fahey to spend over seventy days in a restricted housing unit and resulting in the denial of his parole.

---

[1] The parties consented to having a United States Magistrate Judge exercise jurisdiction over this matter pursuant to 28 U.S.C. § 636, et seq. When this case was initiated and originally assigned by the Clerk of Courts, the undersigned was a Magistrate Judge. However, on September 14, 2018, the undersigned was elevated to the position of United States District Judge and thereafter this case remained assigned to her.

[2] At the time of the filing of this action, Plaintiff was incarcerated and was therefore a prisoner subject to the requirements of the Prison Litigation Reform Act. See Ahmed v. Dragovich, 297 F.3d 201 (3d Cir. 2002).

Fahey further alleges that Sacks acted with deliberate indifference to his paranoid schizophrenia by refusing to acknowledge his diagnosis and accusing him of falsifying his symptoms in order to receive special treatment. As such, Sacks denied Fahey's request to live in single-cell housing, a request that he alleges had been routinely granted in the past in order to preserve the safety of Fahey and those around him and to prevent the deterioration of Fahey's mental condition. Fahey claims his First and Eighth Amendment rights have been violated by Sack's conduct. ECF No. 39.

Defendant filed a motion for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies in accordance with the requirements of the Prison Litigation Reform Act. The motion for summary judgment was denied, but this Court noted that "the issue of exhaustion may need to be resolved through an evidentiary hearing" pursuant to Small v. Camden County, 728 F.3d 265 (3d Cir. 2013). ECF No.67, at page 10.

An evidentiary hearing was held on December 12, 2018, with testimony from Mr. Fahey, and Department of Corrections employees Tracy Shawley and Michael Bell. ECF No. 85. The testimonies of both Ms. Shawley and Mr. Bell were brief and focused on Plaintiff's utilization of the grievance process. Mr. Fahey testified at length about his medical condition, his interactions with Defendant Mr. Sacks, his attempts to utilize the grievance process, and that he was fearful of retaliation at the hands of Mr. Sacks.[3]

---

[3] Plaintiff brought up for the first time in four years that he could not exhaust his administrative remedies because he didn't have his paperwork which he alleged was stolen by a "cellie" conspiring with Defendant Sacks. However, Plaintiff could not articulate a time frame in which he was deprived of his legal materials. ECF No. 88, pages 27-34. Because this allegation was not fully explained and supported at the Small hearing, it is not considered herein.

2

The evidentiary hearing was continued until December 20, 2018, at which time Defendant Mr. Sacks testified as to his interactions with Plaintiff during the relevant time frame. ECF No. 89.

The facts, as stipulated by the parties, establish that Plaintiff failed to properly exhaust his administrative remedies as to the claims in this lawsuit. So then, at the core of the evidentiary inquiry here is whether administrative remedies were available to Plaintiff. The Court, having now considered the testimony of the witnesses and the evidence admitted at the evidentiary hearings, as well as the post-hearing submissions of the parties, will analyze the evidence and the law and make Findings of Fact and Conclusions of Law in support of the accompanying Order, as required by Rule 52 of the Federal Rules of Civil Procedure and <u>Small v. Camden County</u>, 728 F.3d 265.

I. Findings of Fact

1. Defendant David Sacks was an attending Psychologist who provided therapeutic services and monitoring of inmates on Plaintiff's Unit during the fall of 2014. ECF No. 88, page 7; ECF No. 89, pages 10-11.

2. During this time period, corrections officers on this Unit reported to Defendant Sacks that Plaintiff's cellmates were complaining about Plaintiff's inappropriate and disruptive behavior, which included: a) yelling, coughing and hacking, and pacing the cell, at all hours of the night; b) discussing Satanic worship when the discussion was unwelcome and pressuring cellmates to wear a homemade medallion signifying the worship of Satan; 3) general bad hygiene that resulted in Plaintiff having body odor; and 4) maintaining a dirty cell. ECF No. 89, pages 7-8.

3. Defendant Sacks met with Plaintiff several times during the fall of 2014 about these issues and advised him that bad behaviors such as these could have an adverse impact on the Recidivism Reduction Risk Incentive (RRRI) program of which Plaintiff was a part. Id. at pages 6, 9.

4. The RRRI program incentivized inmates to participate fully in their treatment plans so to profit by way of a possible early release. ECF No. 89, pages 9, 12-13.

5. On October 16, 2014, Plaintiff Fahey filed Grievance #532605 about his dissatisfaction with one of these interactions with Defendant Sacks, complaining, among other things, that Defendant Sacks threatened him with several punishments, including reporting that Plaintiff "[is] not ready for release yet…" Stipulated Fact, ECF No. 81, ¶ 1.

6. On October 21, 2014, Ms. Tracy Shawley issued a Grievance Rejection because the date of the interaction between Mr. Fahey and Mr. Sacks was not indicated on the face of the grievance form. Id. at ¶ 2. The Rejection Notice requested that Grievance #532605 be resubmitted within five days to correct the deficiency regarding the date. Id. at ¶ 3.

7. On October 27, 2014, Mr. Fahey resubmitted Grievance #532605 identifying the date of the interaction with Mr. Sacks as October 14, 2014. On November 17, 2014, an Initial Review Response was issued by Deputy Superintendent for Centralized Services Mark DiAlesandro denying Grievance #532605. Id. at ¶¶ 4-5.

8. Mr. Fahey received the response from DSCS DiAlesandro to Grievance #532605. Mr. Fahey did not appeal Grievance #532605 to Final Review. Id. at ¶¶ 6-7.

9. On November 5, 2014, Mr. Sacks issued Misconduct 496033 to Mr. Fahey for "Threatening an Employee with Bodily Harm" and "Using Abusive, Obscene or Inappropriate Language," which resulted in a finding of guilty and a sentence of ninety (90) days in Security Level 5 Housing. Id. at ¶ 19; ECF No. 83, Exhibit 8.

10. On November 17, 2014, Mr. Fahey filed Grievance #536685 claiming that he was given a misconduct by Mr. Sacks and threatened with loss of his RRRI in retaliation for the previous grievance against Mr. Sacks. Stipulated Fact, ECF No. 81, ¶ 8; Exhibit 9.

11. On November 18, 2014, a Grievance Rejection was issued on this grievance. The Rejection Notice requested that Grievance #536685 be resubmitted within five days to correct the noted deficiencies. Id. at ¶¶ 9-10.

12. On November 23, 2014, Mr. Fahey resubmitted Grievance #536685, one day late. Because of the untimely filing, on November 25, 2014, Ms. Shawley issued the second Grievance Rejection of #536685. Id. at ¶¶ 11-13.

13. The second Grievance Rejection of #536685 was received by Plaintiff. Mr. Fahey did not appeal the rejection of Grievance #536685. Id. at ¶¶ 14-16.

14. Plaintiff Fahey utilized DC-ADM 804 and was aware of the process for filing a grievance at SCI-Greene and appealing it to a final review. Id. at ¶ 16. ECF No. 88, page 18.

15. Plaintiff believed the misconduct filed by Sacks against him on November 5, 2014 was retaliation based on Plaintiff's filing of Grievance # 532605. ECF No. 88, at page 14.

16. Plaintiff lost his early release or "RRRI," and he was denied parole because of the misconduct. Id. at page 14.

**I.      Conclusions of Law**

1. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) provides that "no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted." Id.

2. The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002).

3. The exhaustion of administrative remedies is "a non-jurisdictional prerequisite to an inmate bringing suit and, for that reason, … it constitutes a 'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" Rinaldi v. United States, 904 F.3d 257, 265 (3d Cir. Sept. 12, 2018) quoting Small, 728 F.3d at 270.

4. The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

5. The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006). Importantly, the exhaustion

requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83.

6. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

7. The DC-ADM 804 grievance system, available to state prisoners in Pennsylvania, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

8. The PLRA does contain a "textual exception to mandatory exhaustion." Ross v. Blake, 136 S.Ct. 1850, 1858 (2016). "Under § 1997e(a), the exhaustion requirement hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Id.

9. In this context, the Supreme Court has defined "available" as "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Booth, 532 U.S. at 737-38, quoting Webster's Third New International Dictionary 150 (1993).

10. Where prison staff "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," administrative remedies are not available and exhaustion is not required. Woodford, 548 U.S. at 102; Ross, 136 S.Ct. at 59-60. See also Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it.").

11. In Rinaldi v. United States, the Court of Appeals for the Third Circuit joined several sister circuits in holding that "administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." 904 F.3d at 267 (citing precedential opinions from the Second, Seventh, Ninth, Tenth, and Eleventh Circuit Courts of Appeal).

12. It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. at 217 ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." Rinaldi, 904 F.3d at 268, citing Tuckel v. Grover, 660 F.3d 1249, 1253-54 (10th Cir. 2011).

13. The Rinaldi Court directed that in order to defeat a failure-to-exhaust defense, an inmate must prove "(1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." Id. at 269-70.

14. It is at this second prong that Plaintiff's argument of unavailability fails. The misconduct (received on November 5, 2014) did not deter Plaintiff from filing Grievance #536685 against Sacks (on November 17, 2014). Moreover, Plaintiff understood the grievance procedures and the necessity of appealing rejections and denials to the final level of review. Accordingly, Plaintiff cannot claim that the fear of retaliation prevented him from appealing the denial of Grievance #532605 dated November 17, 2014.

15. Plaintiff's own actions in filing Grievance # 536685 belie his assertion that the grievance process was unavailable to him due to the fear of future retaliation.

16. Plaintiff has failed to satisfy his burden of demonstrating to this Court that the administrative remedy process was unavailable to him. Accordingly, Plaintiff's failure to exhaust cannot be excused and this case must be dismissed.

**Conclusion**

Final judgment will be entered in favor of Defendant and against Plaintiff. Judgment will be entered by separate Order in accordance with Rule 58 of the Federal Rules of Civil Procedure.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge

Date: January 18, 2019